**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Ashley E. A.,                                    Case No. 22-cv-280 (WMW/TNL)

       Plaintiff,

v.                                                           **REPORT &**
                                                                 **RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

       Defendant.

Clifford Michael Farrell, Manring & Farrell, P.O. Box 15037, 167 North High Street, Columbus, OH 43215, and Edward C. Olson, Reitan Law Office, 80 South 8th Street, Suite 900, Minneapolis, MN 55402 (for Plaintiff); and

Una McGeehan, Assistant United States Attorney, Social Security Administration, 1301 Young Street, Suite 350, Mailroom 104, Dallas, TX 75202, James D. Sides, Social Security Administration, Office of the General Counsel, 6401 Security Boulevard, Baltimore, MD 21235, and Ana H. Voss, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

## I. INTRODUCTION

Plaintiff Ashley E. A. brings the present case, contesting Defendant Commissioner of Social Security's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.*

This matter is before the undersigned United States Magistrate Judge on cross motions for summary judgment, Plaintiff's Motion for Summary Judgment, ECF No. 16, and the Commissioner's Motion for Summary Judgment, ECF No. 18. These motions have

1

been referred to the undersigned for a report and recommendation to the district court, the Honorable Wilhelmina M. Wright, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, ECF No. 16, be **GRANTED IN PART** and **DENIED IN PART**; the Commissioner's Motion for Summary Judgment, ECF No. 18, be **DENIED**; and this matter be **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

## II. PROCEDURAL HISTORY

On June 24, 2019, Plaintiff applied for DIB, and on July 16, 2019, Plaintiff applied for SSI. Tr. 11, 274-85. Plaintiff asserted that she has been disabled since December 2017, due to anxiety disorder, post-traumatic stress disorder, obsessive compulsive disorder, and agoraphobia.[1] Tr. 11, 14, 284. Plaintiff's applications were denied initially and again upon reconsideration. Tr. 11, 202-08, 212-18.

Plaintiff appealed the reconsideration of her DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ"). Tr. 11, 219-42. The ALJ held a hearing in September 2020, and issued an unfavorable decision. Tr. 8-29, 55-93. After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-7.

---

[1] While Plaintiff also asserted that she had been disabled on the basis of physical impairments (namely, degenerative disc disease, status-post multiple back surgeries, diabetes, arthritis, asthma, and obesity), Plaintiff's challenge here concerns only her mental impairments. *See* Pl.'s Mem. in Supp. at 7-11, ECF No. 17.

Plaintiff then filed the instant action, challenging the ALJ's decision. Compl., ECF No. 1. The parties have filed cross motions for summary judgment. ECF Nos. 16, 18. This matter is now fully briefed and ready for a determination on the papers.

## III. ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.315. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

The ALJ determines disability according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a).

In this evaluation process, the ALJ determines the claimant's residual functional capacity, which "is the most [s]he can do despite h[er] limitations." 20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1). "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360. At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092. As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F. 4th at 1360 (quotation omitted). Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted). Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360.

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). Thus, the Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich*, 888 F.3d at 979 (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm

the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

### B.  ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of agoraphobia, anxiety disorder, post-traumatic stress disorder, and obsessive compulsive disorder, among others, and none of these impairments individually or in combination met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app.1.  Tr. 14-17.  The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work[2] with additional limitations, in relevant part, as follows:

> [Plaintiff] is limited to performing simple, routine, and repetitive tasks and can work in a low stress job, defined as making only occasional decisions and tolerating only occasional changes in the work setting; and no more than occasional interaction with supervisors, coworkers, and the general public with respect to performing work related duties.

Tr. 17.  The ALJ found that Plaintiff was unable to perform her past relevant work as a home attendant, payroll clerk, or general clerk.  Tr. 22-23.  However, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  Tr. 23.  Specifically, based on Plaintiff's

---

[2] As set forth in the regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *accord* 20 C.F.R. § 416.967(a).

age, education, work experience, residual functional capacity, and the testimony of the vocational expert, the ALJ found that Plaintiff was capable of making a successful adjustment to the representative occupations of addresser, document preparer, and survey systems monitor. Tr. 23-24. Accordingly, the ALJ concluded that Plaintiff was not under disability. *Id.*

### C. Prior Administrative Medical Findings

Plaintiff's sole argument is that "the ALJ failed to provide adequate reasoning explaining how the opinions from the State Agency psychologists were accounted for within the residual functional capacity." Pl.'s Mem. in Supp. at 7. Specifically, Plaintiff contends that the ALJ erred by limiting Plaintiff to "*occasional* interaction with supervisors, coworkers, and the general public," when the state agency psychological consultants opined that Plaintiff should be limited to "brief, infrequent, and *superficial* contact." *Id.* at 8-9 (emphasis added).

### 1. State Agency Psychological Consultants' Opinions

On initial review, one of the state agency psychological consultants, Jeffrey Boyd, Ph.D., assessed Plaintiff's mental residual functional capacity. Tr. 130-33.

First, Dr. Boyd opined that Plaintiff did not have any understanding and memory limitations. Tr. 131, 149.

With respect to Plaintiff's ability to sustain concentration, persistence, and pace, Dr. Boyd opined that Plaintiff was moderately limited in her abilities to carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 131, 149.  Plaintiff was otherwise not significantly limited in this area.  Tr. 131, 149.  Dr. Boyd explained that Plaintiff "retains sufficient mental capacity to concentrate on, understand, and remember simple and moderately complex instructions," and her "ability to carry out routine, repetitive tasks would be intact, but markedly impaired for detailed and complex tasks."  Tr. 132, 150-51.

As for Plaintiff's ability to interact with others, Dr. Boyd opined that Plaintiff was moderately limited in her ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr. 132, 150.  Dr. Boyd opined that Plaintiff was otherwise not significantly limited.  Tr. 132, 150.  Dr. Boyd explained that Plaintiff's "capacity to cope with co-workers and the general public would be significantly restricted but adequate to handle *brief, infrequent and superficial* contact."  Tr. 132, 151 (emphasis added).  Dr. Boyd also opined that Plaintiff's "ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision found in a customary work setting." Tr. 132-33, 151.

Lastly, with respect to Plaintiff's ability to adapt, Dr. Boyd opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting, but otherwise not significantly limited.  Tr. 132, 150.  Dr. Boyd explained that Plaintiff's "ability to tolerate and respond appropriately to stress in the work place would be reduced but adequate to handle the routine stresses of a routine, repetitive work setting."  Tr. 133, 151.

8

On reconsideration, Mary X. Sullivan, Ph.D., affirmed Dr. Boyd's findings.  Tr. 172-74, 193-95.

### 2.  ALJ's Residual Functional Capacity

In limiting Plaintiff to "no more than *occasional* interaction with supervisors, coworkers, and the general public" in the residual functional capacity, the ALJ analyzed the opinions of the state agency psychological consultants.  Tr. 17 (emphasis added); *see also* Tr. 21-22.  The ALJ summarized Dr. Boyd and Dr. Sullivan's findings as follows:

> [Plaintiff] had mild to moderate limitations, retained sufficient mental capacity to concentrate on, and understand and remember simple and moderately complex instructions, her ability to carry out routine, repetitive tasks would be intact, but markedly impaired for detailed and complex tasks, her capacity to cope with co-workers and the general public would be significantly restricted, but adequate to handle brief, infrequent, and *superficial* contact, her ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision found in a customary work setting, and her ability to tolerate and respond appropriately to stress in the work place would be reduced but adequate to handle the routine stresses of a routine, repetitive work setting.

Tr. 21 (emphasis added).

The ALJ found the prior administrative medical findings of the state agency psychological consultants "somewhat persuasive" because "they are supported by discussions about [Plaintiff's] impairments, and are somewhat consistent with the evidence."  Tr. 21.  The ALJ explained, however, that "moderate limitations in all B

criteria[3] with the mental limitations [in the residual functional capacity] is more appropriate." Tr. 21. In support of this finding, the ALJ noted that there was "evidence that, at times, [Plaintiff's] mood was depressed and anxious, she had auditory hallucinations, she had paranoid delusions, her memory was impacted, and she had suicidal ideation, balanced with otherwise normal mental status examinations, permitting [Plaintiff] to perform work with the mental limitations [in the residual functional capacity]." Tr. 21-22.

Plaintiff contends that the ALJ, without explanation, omitted the state agency psychologists' opinions that Plaintiff should be limited to superficial interaction with others. Pl.'s Reply at 1, ECF No. 20; *see also* Pl.'s Mem. in Supp. at 7. By limiting her to occasional interaction with others, Plaintiff asserts that the ALJ "acknowledge[d] a limitation relative to the *quantity* of time [she] may interact with others in the workplace, . . . [but] did not address the *quality* of relationships [she] would be able to keep." Pl.'s Mem. in Supp. at 9-10 (emphasis added). Thus, Plaintiff argues that the ALJ's residual functional capacity does not accurately reflect Plaintiff's mental limitations. Pl.'s Reply at 2. Accordingly, Plaintiff asks the Court to reverse the decision of the Commissioner and order immediate payment of Social Security disability benefits or, in the alternative, remand Plaintiff's claim to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings. Pl.'s Mem. in Supp. at 12.

---

[3] The "B criteria" refers to four broad areas of functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintain pace; and (4) adapting or managing oneself. Tr. 15-17.

The Commissioner fails to address Plaintiff's argument about superficial interaction directly. *See generally* Comm'r's Mem. in Supp., ECF No. 19. Instead, the Commissioner contends that "[s]ubstantial evidence supports the ALJ's mental [residual functional capacity] finding," and "Plaintiff has not met her burden of proving that the prior administrative medical findings warranted additional mental [residual functional capacity] limitations." *Id*. at 7-9.

Plaintiff subsequently filed a reply memorandum with supplemental authority from the Appeals Counsel that she asserts "provides some more context concerning superficial interactions." Pl.'s Reply at 2; *see also* ECF Nos. 21, 21-1. This authority is an order from the Appeals Council in another claimant's case, which the Court will refer to as *In re Paul K. B. See generally* ECF No. 21-1. *In re Paul K. B.* was remanded to the Commissioner for further administrative proceedings by a federal court in the Northern District of Ohio based on a stipulation of the parties.[4] *See generally Paul K. B. v. Kijakazi*, No. 3:21-CV-02351 (N.D. Ohio May 10, 2022) (order). Similar to the present case, the prior administrative medical findings of the state agency psychological consultants in *In re Paul K. B.* included, among other things, a limitation to "superficial interaction with others." *In re Paul K. B.*, ECF No. 21-1 at 3. The ALJ found the prior administrative medical findings of the state agency psychological consultants to be "mostly persuasive, but rejected the opinion that the claimant needs no more than 'superficial interaction' with others, because this term 'is not a vocationally proper term.'" *In re Paul K. B.*, ECF No. 21-1 at 3. On

---

[4] The parties' stipulation is not a publicly filed document to which the Court has access.

remand, the Appeals Council concluded that further evaluation of the state agency psychological consultants' prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c was warranted, explaining:

> '[S]uperficial interaction' is a term that is readily defined, understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others, i.e., coworkers, the general public, and/or supervisors. This term is distinguishable and distinct from 'occasional' which describes the frequency of interaction with others and how much interaction the claimant could tolerate on a sustained basis.

*In re Paul K. B.*, ECF No. 21-1 at 3-4. Plaintiff contends that the Social Security Administration "formally acknowledged the difference between the two terms" in *In re Paul K. B.*, and now, "it is even clearer that the ALJ's residual functional capacity does not accurately reflect [Plaintiff's] mental capabilities because the ALJ failed to include a superficial limitation and failed to provide an adequate reason for this exclusion." Pl.'s Reply at 2.

Courts have recognized that the terms "'occasional' and 'superficial' are not coterminous." *Eden v. Comm'r of Soc. Sec.*, No. 18-CV-0076-LTS-KEM, 2019 WL 7666532, at *2 (N.D. Ia. June 6, 2019) (quotation omitted) (citing cases), *report and recommendation adopted*, 2019 WL 5260476 (N.D. Ia. Oct. 17, 2019)); *see also, e.g.*, *Redd v. Comm'r of Soc. Sec.*, No. 1:20-CV-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("With regard to social limitations, courts have distinguished limitations that concern 'the quality or nature of interactions' from limitations that concern 'the quantity of time involved with those interactions.'" (quoting *Kilgore v. Saul*, No. 1:19-CV-168, 2021 WL

932019, at *7 (E.D. Tenn. Mar. 11, 2021)); *Casey v. Comm'r of Soc. Sec.*, 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("The terms 'occasional' and 'superficial' are not interchangeable."), *report and recommendation adopted*, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019); *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("These limitations are not interchangeable, nor does one imply the other.").  In doing so, courts have explained that "'[o]ccasional contact' goes to the *quantity* of time spent with the individuals . . . ."  *Hurley*, 2018 WL 4214523, at *4 (quotation omitted) (emphasis added); *see Titles II & XVI: Determining Capability to Do Other Work—The Medical-Vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251, at *5 (Soc. Sec. Admin. Jan. 1, 1983) (defining "occasionally" as "occurring from very little up to one-third of the time"); *see also, e.g.*, *Swank v. Comm'r of Soc. Sec.*, No. 2:20-cv-2396, 2021 WL 1345420, at *5 (S.D. Ohio Apr. 12, 2021) (citing cases).  This is distinct from "'superficial contact' [which] goes to the *quality* of the interactions."  *Hurley*, 2018 WL 4214523, at *4 (quotation omitted) (emphasis added); *see also, e.g.*, *Swank*, 2021 WL 1345420, at *5 (citing cases).  Thus, "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions."  *Sanders v. Astrue*, No. 11-cv-1356 (JNE/JJG), 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012), *report and recommendation adopted as modified*, 2012 WL 1658988 (D. Minn. May 11, 2012).  As such, "courts routinely find that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to 'superficial' interaction."  *Sue A. M. v. Comm'r of Soc. Sec.*, No. 3:22-cv-171, 2022 WL 14346260, at *4 (S.D. Ohio Oct. 25,

2022) (citing cases) (emphasis in original); *see also, e.g., Jason M. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00272, 2022 WL 4591305, at *4 (S.D. Ohio Aug. 17, 2022) ("The ALJ's conclusion that Plaintiff is capable of occasional interactions, without including a limitation that restricts him to superficial interactions, constitutes reversible error."); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00324, 2022 WL 4102814, at *5 (S.D. Ohio Sept. 8, 2022) ("Because the ALJ failed to either adopt the state agency psychologists' opinion that Plaintiff should be limited to only 'superficial' contact with others, or to explain why he did not do so, the matter must be remanded to the Commissioner for further consideration of this issue.").

While there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion," including a state agency psychological consultant's opinion, *Schmitt*, 27 F. 4th at 1360 (quotation omitted), the ALJ is required to "explain why a medical opinion was not adopted if it conflicts with the [residual functional capacity]." *Christine F. v. Kijakazi*, No. 21-cv-2048 (NEB/LIB), 2022 WL 3648674, at *5 n.3 (D. Minn. July 27, 2022), *report and recommendation accepted*, 2022 WL 3647808 (D. Minn. Aug. 24, 2022). "An ALJ's reasoning need only be clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631 (quotation omitted). "While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (quotation omitted).

Here, the Court finds that the ALJ erred by failing to explain why he did not adopt the state agency psychological consultants' opinion that Plaintiff should be limited to "superficial" contacts with others.  That limitation fails to address or conflicts with the ALJ's residual functional capacity limitation to "occasional" contacts with others.  *See Eden*, 2019 WL 7666532, at *2 ("The Commissioner responds that the limitation to 'brief, superficial interactions with others' is consistent with the ALJ's limitation to 'only occasional interaction with the public, co-workers, and supervisors.' I disagree. As other courts have recognized, 'occasional' and 'superficial' are not coterminous.") (citations and quotations omitted).  The ALJ was therefore required to explain why he deviated from or imposed a lesser limitation than that found in the medical opinion evidence.  *See Lauer v. Apfel*, 245 F.3d 700, 704-05 (8th Cir. 2001) (the ALJ may not impose fewer limitations than those found in all the medical-opinion evidence and thereby formulate his own medical opinion); *contra Jason L. v. Kijakazi*, No. 22-cv-1955 (PAM/ECW), 2023 WL 35876, at *2 (D. Minn. Jan. 4, 2023) (finding that the difference between "superficial" and "occasional" was "a distinction without a difference" where the residual functional capacity formulated by the ALJ was "*more* deferential to Plaintiff's limitation than [the state agency psychologist's] opinion") (emphasis added).

The only medical opinions in the record addressing Plaintiff's limitations in her ability to interact with others are (1) the opinion from consultative examiner Alford Karayusuf, M.D., and (2) the state agency psychological consultant opinions from Drs. Boyd and Sullivan.  *See* Tr. 21-22.  Drs. Karayusuf, Boyd, and Sullivan all opined that

Plaintiff was limited to brief, superficial, and infrequent interactions with others, but the ALJ limited Plaintiff to occasional interactions with others instead.

Dr. Karayusuf completed a consultative examination of Plaintiff in October 2019. Tr. 915. He opined that Plaintiff "is restricted to brief, superficial, infrequent interactions with fellow workers, supervisors and the public." Tr. 916-17. In his decision, the ALJ summarized Dr. Karayusuf's opinions correctly: "[Dr.] Karayusuf . . . examined [Plaintiff] and reported that . . . she was restricted to brief, superficial, infrequent interactions with fellow workers, supervisors and the public . . . ." Tr. 22. The ALJ found Dr. Karayusuf's opinions "persuasive," yet failed, without *any* explanation, to include Dr. Karayusuf's opinion that Plaintiff was limited to "brief, superficial, [and] infrequent interactions" in the residual functional capacity. *See id.*; *see also, e.g., Matthew F. v. Kijakazi*, No. 3:20-cv-15564, 2022 WL 1442243, at *9 (D. N. J. May 6, 2022) ("[I]t is unclear to the Court why the ALJ, having found persuasive the [doctor's] limitation that Plaintiff could, *inter alia*, 'interact briefly/superficially with coworkers and supervisors,' did not include any such limitation in the [residual functional capacity]," and instead included a limitation to "occasional interaction"); *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00324, 2022 WL 4102814, at *5 (S.D. Ohio Sept. 8, 2022) (remanding where "the ALJ failed to explain why he included a limitation to 'occasional' contact with others, but not a limitation to 'superficial' contact, as opined by the reviewing state agency psychologists upon whose opinions the ALJ relied").

The ALJ's explanation for failing to include the same opinions of the state agency psychological consultants is similarly lackluster. For several reasons, the ALJ's decision

does not make clear why the state agency psychological consultants' limitation to superficial interactions with others was not included in the residual functional capacity.

First, while the ALJ found the state agency psychological consultants' opinions only "somewhat persuasive," he did not explain specifically that he was rejecting their opinion about "superficial" contact.  Instead, his decision reflects that he was rejecting other limitations opined by the state agency psychological consultants.  For example, in finding the state agency psychological consultants' opinions "somewhat persuasive," the ALJ found that "moderate limitations in all B criteria" were more appropriate.  Tr. 21.  But in his discussion of the B criteria earlier in his analysis, the ALJ concluded that Plaintiff "has a **moderate** limitation" in interacting with others.  Tr. 16 (emphasis in original).  This is the same opinion reached by the state agency psychological consultants, namely, that Plaintiff is "[m]oderately limited" in interacting with others.  *See* Tr. 132, 150.  Further, the only thing the ALJ cites in support of more "moderate limitations in all B criteria" is Plaintiff's "normal mental status examinations."  Tr. 22.  But the ALJ did not cite Plaintiff "normal mental status examinations" in *all* the B criteria.  The ALJ noted that Plaintiff's "mental status reports" showed no serious deficits in long-term memory, short-term memory, insight, and judgment when discussing Plaintiff's moderate limitation in "understanding, remembering or applying information.  Tr. 15-16.  And he noted that Plaintiff's "mental status examinations" showed intact thought process, full orientation, good judgment and insight, and intact cognition when discussing Plaintiff's moderate limitation in "concentrating, persisting or maintain pace."  Tr. 16.  Notably, the ALJ did *not* discuss Plaintiff's "normal mental status examinations" when explaining Plaintiff's

moderate limitation in "interacting with others."  *See* Tr. 16.  Thus, "the Court cannot discern from this explanation which portions of [the] state agency psychological consultants' opinions were found persuasive or unpersuasive." *See Christine F.*, 2022 WL 3648674, at *4.

Additionally, as already discussed, Dr. Karayusuf opined that Plaintiff could handle only "brief, infrequent, and superficial contact," and the ALJ found that opinion "persuasive."  Tr. 22.  Any conclusion that Dr. Karayusuf's opinion regarding superficial contact is persuasive but the state agency psychological consultants' identical opinions are "somewhat persuasive" or not persuasive is inconsistent.  *See Draper*, 425 F.3d at 1130 ("[I]naccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand.").

This also leads the Court to question whether the ALJ  "failed to appreciate the distinction between *occasional* and *superficial* interactions."  *See Sue A. M.*, 2022 WL 14346260, at *4 (emphasis in original); *see also Runyon v. Comm'r of Soc. Sec.*, No. 2:20-cv-3820, 2021 WL 3087639, at *5 (S.D. Ohio July 22, 2021) (finding "the problem here is that the ALJ's discussion reveals that he failed to even consider whether Plaintiff did, in fact, require a limitation to only superficial interaction because he appeared not to appreciate the distinction between 'occasional' and 'superficial' interaction"), *report and recommendation adopted*, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Simmer v. Kijakazi*, No. CIV-21-361-GLJ, 2022 WL 17831396, at *4 (E.D. Okla. Dec. 21, 2022).  It may be that the ALJ intended the limitation to "occasional interaction" with others in the residual functional capacity to accommodate both the quantity and superficial quality of

18

those interactions. But because the ALJ's analysis was incomplete and contains unresolved conflicts of evidence regarding a superficial-interactions limitation, the Court finds that remand is required for the ALJ to further address the opinion evidence on this issue.

Courts in this district have reached the same conclusion under similar facts. In *Christine F.*, for example, the state agency psychological consultants opined that the plaintiff was moderately limited in her ability to interact appropriately with others. 2022 WL 3648674, at *5. They further opined that the plaintiff was limited to "brief, infrequent, and superficial interactions with others." *Id*. The ALJ found the state agency psychological consultants' opinions "partially persuasive," but did not explain exactly "which portions of . . . [the] opinions were found persuasive or unpersuasive." *Id*. The court found that remand was required for the ALJ to further address the state agency psychological consultants' opinions, explaining:

> The [residual functional capacity] . . . included a limitation to 'occasional interaction with coworkers, supervisors and the general public' . . . [but] did not contain a limitation involving brief or superficial interactions, as opined by the state agency psychological consultants. The ALJ should have offered an explanation as to why their opined limitation to the quality of Plaintiff's interactions with others was not incorporated in the [residual functional capacity].

*Id*. at *5 n.3. Similarly, here, the state agency psychological consultants opined that Plaintiff was moderately limited in her ability to interact appropriately with others and is limited to "brief, infrequent and superficial contact" with others. Tr. 132, 151. While the ALJ found the state agency psychological consultants' opinions only "somewhat persuasive," he was required to explain why he did not incorporate a limitation to brief,

infrequent, and superficial interactions with others into the residual functional capacity. *See Christine F.*, 2022 WL 3648674, at *5 ("[T]he ALJ did not explain which portions of the state psychological consultants' opinions were persuasive (or not) . . . or otherwise adopt specific findings from these consultants").  Absent this explanation, remand is required for the ALJ to further address the state agency psychological consultants' opinions regarding superficial interactions.

In sum, it is simply not clear from the ALJ's decision why a limitation to superficial interactions with others was not included in the residual functional capacity, or, alternatively, if such a limitation was intended to be included, how a quantitative limitation sufficiently accounted for reduced functioning with respect to the type of interaction with others.  *See Cross v. Comm'r of Soc. Sec.*, No. 20-cv-01039-STV, 2022 WL 2829909, at *2 n.1 (D. Colo. July 19, 2022) ("[T]o the extent the ALJ did not adopt [the doctor's] opinion in its entirety—affording it only some weight—the ALJ failed to explain his basis for rejecting [the doctor's] limitation to superficial interaction with coworkers.").  Thus, the ALJ's analysis was incomplete and contains unresolved conflicts of evidence, and remand is required for the ALJ to further address the state agency psychological consultants' opinions regarding superficial interactions.  The ALJ should address specifically Drs. Karayusuf, Boyd, and Sullivan's opinions that Plaintiff was limited to brief, superficial, and infrequent interactions with others, why he declined to include this limitation in the residual functional capacity, or explain how the residual functional capacity accommodated this limitation.  With such clarification by the ALJ and testimony elicited from a vocational expert, it may even be that the jobs of addresser, document

preparer, and survey systems monitor remain available. On remand, the ALJ should feel free to take additional testimony from a vocational expert if warranted under the circumstances.

## IV. RECOMMENDATION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 16, be **GRANTED IN PART** and **DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 18, be **DENIED**.

3. This matter be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Date: January ___30___, 2023                     _____*s/ Tony N. Leung*_____
                                                 Tony N. Leung
                                                 United States Magistrate Judge
                                                 District of Minnesota

                                                 *Ashley E. A. v. Kijakazi*
                                                 Case No. 22-cv-280 (WMW/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).